SALVADOR CARRASQUILLO, Plaintiff and Appellant, *v.* GABRIEL RIPOLL, Defendant. PEDRO MONTALVO, Intervener and Appellee.

No. 8063. Argued March 7, 1940.—Decided March 13, 1940.

*Gaspar Gerena Bras* for appellant. *Diego E. Ramos* for appellee.

Mr. Justice De Jesús delivered the opinion of the court.

Pursuant to a judgment of the Municipal Court of Utuado there was adjudicated to Salvador Carrasquillo a piece of rural property owned by Gabriel Ripoll. Carrasquillo brought unlawful detainer proceedings against Ripoll in the District Court of Arecibo and the defendant failing to appear judgment was entered against him. On August 10, 1938, the ejectment was proceeded with not only of the defendant but of Pedro Montalvo who was living in another house of the same estate.

On June 22 of the same month Montalvo filed a motion for leave to intervene in the action of unlawful detainer, said motion being accompanied by a verified amended complaint. After a hearing as to whether the intervention lay, the court, on the 21st of the following month, allowed the intervention, notwithstanding the fact that the judgment had already be-

come final and notwithstanding the opposition of plaintiff Carrasquillo.

The intervener, in his amended complaint, after referring to the unlawful detainer proceeding prosecuted against Ripoll and his ejection, went on alleging that for several years prior to the bringing of the unlawful detainer proceeding, the intervener had been in possession of a 8-acre parcel from the main property under a share-cropper's contract made with Ramón Larracuente, whereupon he described the crops he had planted; that he had had no knowledge of the action wherein Ripoll's estate had been adjudicated to Carrasquillo, nor of this unlawful detainer proceeding until his ejection from the property; that the ejectment proceeding as far as the intervener is concerned is null and void "inasmuch as he is and has never been connected with defendant Ripoll by any tie, that is to say, as relative, agent, employee, tenant, tenant at sufferance, colono or share-cropper, or in any other capacity. . ."

. The answer denies the essential allegations of the amended complaint in intervention and ends with an allegation entitled "New Matter," in which plaintiff Carrasquillo recites how Ripoll acquired the parcel in controversy.

After hearing the evidence in the intervention proceeding, the lower court made an order ratifying the ouster of the intervener, but adjudged the plaintiff in the ejectment proceeding, Salvador Carresquillo, to pay him the sum of $75 as the estimated value of the crops standing on the 8-acre parcel.

In support of his order, the trial judge expressed himself as follows:

"At the trial of the case the intervener mentioned a share-cropper's contract but so vaguely that we came to the conclusion that his relation to Larracuente, former owner of the property, as regards the portion occupied by him, was rather that of a tenant at sufferance who is allowed to till a plot of ground and to live on the property.

"It appears from the facts as submitted that the plaintiff herein ejected the intervener who was, in his opinion, a tenant at sufferance.

and dependent on the defendant. An affidavit was introduced in evidence from which it appears that about April, 1937, Montalvo leased from Ripoll the said 8-acre parcel part of the estate the subject matter of the unlawful detainer proceeding and there was evidence to the effect that said contract was afterwards terminated. Mention is made in the contract that Montalvo should be entitled to compensation for certain improvements. However, the intervener has failed to produce in court a true theory of his case, because he appears as testifying about a share-cropper's contract and denied that he had entered into any lease contract, although said lease contract was authenticated by a notary.

"Even conceding that the intervener had been properly ousted, it would be unfair that he should not be paid something as compensation for the value of his crops. It is true that he might have availed himself of the right afforded him by the unlawful detainer law for assessing the value of said crops at the time of the ouster; but taking into account that he was not officially notified at all of the unlawful detainer proceedings nor of the ouster and that he might have been ignorant of his rights for lack of an opportunity to consult a lawyer, the court is of the opinion that, as evidence was heard at the hearing of the unlawful detainer proceeding regarding the value of such crops, which were though excessively estimated, we may equitably grant some compensation so that full justice might be meted out in the present case.

"For the foregoing reasons and in view of the evidence heard, the court, although affirming the ouster of Pedro Montalvo, decrees that plaintiff Salvador Carrasquillo pay the sum of $75 to Pedro Montalvo as compensation for the crops growing on the plot of ground tilled by him on the property the subject matter of the unlawful detainer proceeding, which sum shall be deposited in the office of the clerk of this court within ten days from the entry of this order."

In his brief in support of this appeal, Carrasquillo assigns the following errors as committed by the trial court: the allowance of the complaint in intervention; the overruling of the demurrers of defect of parties in interest and of insufficiency of facts constituting a cause of action; and finally the weighing of the evidence and his being adjudged to pay to the intervener $75 as compensation for his crops.

■■ The law governing the right of intervention is contained in section 72 of the Code of Civil Procedure which in its pertinent part reads as follows:

"Sec. 72.—Any person may, *before the trial,* intervene in an action or proceeding, who has an interest in the matter in litigation, in the success of either of the parties, or an interest against both. . ." (Italics ours.)

The language of the above provision supports the thesis of the appellant to the effect that leave to intervene sought in the present case came too late, in view of the fact that when the motion for intervention was filed not only a trial had been had and judgment rendered in the main action but the judgment had been already executed. However, the limitation of the time for filing the petition had for its objection to prevent delay in the prosecution of the main action and a disturbance of the judgment rendered. *Benítez* v. *Tabacaleros etc.* and *Fed. Int. Credit Bank,* 50 P.R.R. 754, and decisions there cited.

In the case at bar, whatever judgment might be rendered can in no way affect that already rendered and executed against Ripoll. Therefore, the lower court was right in granting leave to intervene, even though the judgment in the main action had been rendered and executed.

■■ A mere reading of the complaint in intervention shows that it is sufficient, for an interest to intervene adverse to the claims of the plaintiff in the main action appears from its allegations. It was not necessary for the intervener to include as a party the person from whom, as alleged by him, he derived his right to stay in the property, on the one hand, because no relief was sought by him in his complaint as against said person, for within summary unlawful proceedings no title to the property in controversy claimed by the party in question can be discussed therein.

■■ We agree, however, with the appellant that the lower court committed error in weighing the evidence. From the testimony of the intervener we transcribe as follows:

"Q.—Do you know Gabriel Ripoll? A. I do.

"Q.—How long have you known him? A. For twenty years.

"Q.—Have you known him as the owner of this land? A. Never.

"Q.—Or of any land in this barrio? A. No sir; a 70-acre parcel from that land was owned by his father and seized by the Federal Bank.

"Q.—Have you had any dealings with Ripoll regarding this or any other property? A. No, sir.

"Q.—Have you leased any land from Ripoll? A. No, sir.

"Q.—Or have you entered into any share-cropper's contract with him? A. No, sir.

"Q.—Or have you been his tenant at sufferance? A. No, sir.

"Q.—Or his employee? A. Never.

"Q.—Are you related to him? A. Never." (Transcript of Record, p. 4.)

Further on, on cross-examination, the following appears:

"Q.—You have testified under oath that you have never had any dealings with Ripoll? A. No, sir.

"Q.—Did you not lease some acres from him? A. No, sir.

"Q.—Did you hold a lease of eight acres on shares with Larracuente? A. Yes, sir.

"Q.—Is it or is it not true that about April 12, 1937, you appeared before notary Francisco R. Flores, of Utuado, and there, on April 12, 1937, Gabriel Ripoll leased to you eight acres out of the 31 acres? A. No, sir. I know of that lease on shares from the heirs of Larracuente.

"Q.—I ask you if that is true? A. It is not.

"Q.—Can you read? A. No, sir.

"Q.—Look at that mark there. A. I do not know, I can not write.

"Q.—That mark, look at it. A. Anybody can make it.

"Q.—Did you not make that mark? A. Anybody can make that mark." (Trancsript of record, p. 7-8.)

The instrument referred to in the foregoing cross-examination is a contract entered into between Ripoll and the intervener on April 12, 1937, in the city of Utuado, before Notary Francisco R. Flores, by virtue of which the former leased to the latter the 8 acres in controversy for the term of six years at $100 for the whole 6 years, which was paid at the time of executing the deed.

Contrary to the statement of the trial judge in his opinion, nothing appears from the record to show, even remotely, that such contract had been canceled by the parties. It also appears from the evidence that the Larracuente with whom the intervener alleges to have entered into a share-cropper's contract was merely a lessee of the main property who delivered the same to the owner before Ripoll, about the year 1928, after the San Felipe cyclone.

We must, therefore, admit as having been established that at the time of the acquisition of the property by Carrasquillo, and likewise at the commencement of the unlawful detainer proceeding against Ripoll, the intervener was in possession of the 8 acres in controversy under the lease from Ripoll. Upon the above premise, the law applicable to the case is section 1461 of the Civil Code (1930 ed.), which literally transcribed reads as follows:

"Section 1461.—The purchaser of a leased estate has a right to terminate the lease in force at the time of making the sale, unless the contrary is stipulated, and the provisions of the Mortgage Law prevent.

If the purchaser should make use of this right, *the lessee may demand that he be permitted to gather the fruits of the crop corresponding to the current agricultural year and that he be indemnified by the vendor for the losses and damages he may have suffered.*" (Italics ours.)

In his commentaries on section 1571 of the Spanish Civil Code, equivalent to the above quoted section, Manresa says:

"In accordance with this theory, section 1571 lays down the principle that the purchaser of a leased property is entitled to have the lease in force at the time of the sale terminated. The ground for this theory is the circumstance that as the lease is a contract entered into between the lessor and the lessee and as the purchaser may be considered as a third party in respect thereto, no personal rights may prevail as against him.

"By this section the statute has evidently established a further ground for unlawful detainer proceedings, which ground arises, not from any act or omission on the part of the lessee, like the others which we have considered, but from the act of the transfer of owner-

ship carried out by the lessor, which by giving rise to a new privity exerts positive influence upon the prior one by reason of the principles on which each is based and of the common subject matter to which they refer, which is the leased property.

"Before the jurisprudence on this section had had time to become established, we heard it discussed whether or not the right conferred thereby on the purchaser could be exercised by means of an action of unlawful detainer and trial thereof. We always favored the affirmative, because, if what is conferred on the purchaser is the right to cancel a lease so as to place the property entirely at his disposal, none other is the purpose sought by unlawful detainer proceedings, and because, if such is the proceeding that lies in those cases where the ground therefor appears from a clear and evident fact, the sale giving rise to the right of the purchaser is notoriously a fact of such a nature. It can not, therefore, be questioned that there is involved a new ground for unlawful detainer proceeding and that it is by means of this proceeding that the purchaser may enforce his right where the lessee refuses to recognize it voluntarily. Numerous cases have already gone up to the Supreme Court, and not even once has the propriety of such proceeding been questioned." Manresa's "Commentaries on the Civil Code," Vol. 10, p. 637.

Further on, analyzing the right that the lessee might have against the vendor to compensation for any damage or injury suffered by him as a result of the sale, said commentator proceeds as follows:

"Another right pertaining to the lessee is his claim against the vendor for compensation for damages suffered by him. He can not claim compensation for damages from the purchaser because it was not with him that he contracted; there is no privity between them. The position of the vendor is different, because the vendor is the lessor of the property and as such lessor he obligated himself to keep him in the undisturbed enjoyment of the leased property during the life of the lease, which obligation he has broken by the sale of the thing. It is, therefore, fair that he should compensate him.

"Regarding the amount of compensation, it is well known that the criterion of our courts is not usually very wide and that whenever such an action is brought it must be borne in mind that the damages for which compensation is allowed are those that are proven. The burden of proof, therefore, is on the lessee." Manresa's "Commentaries on the Civil Code," p. 643.

See also the decisions in *Sosa* v. *Río Grande Agrícola Co., Ltd.*, 17 P.R.R. 1106; *Anglerõ* v. *Fernández*, 31 P.R.R. 249; *Flores* v. *Delgado*, 34 P.R.R. 745; *Díaz* v. *Delgado*, 38 P.R.R. 563; and *Díaz* v. *Delgado*, 41 P.R.R. 827.

Referring once more to the rights of the lessee under the section mentioned, Manresa says:

"Therefore, the actions available to the lessee are two: one against the purchaser and the other against the vendor.

"The action against the purchaser is available to him only where a piece of rural property is involved, and *consists in demanding that he be permitted to gather the fruits of the crop corresponding to the current agricultural year.* The meaning of this phrase is transparent and requires no explanation, but its application in some cases may give rise to doubts.

"Which shall be the adequate solution in the case of a lease of a cork-tree plantation the crop of which is only gathered every eight years? And which shall it be in the case of a pine forest of which the next crop can not be cut until after two years? We do not think that neither such cutting nor such harvest can be considered as fruits of the crop of the current agricultural year, or that the intent of the law was to include such cases within its meaning, or that such fruits should be considered as of a *crop* in its proper meaning. Compensation from the vendor to the lessee is the only apparent reasonable solution within the statute, especially if account is taken of the exceptional nature of the right of the lessee as against the purchaser in such cases." Id., pp. 641–642. (Italics ours.)

The crops of the intervener consisted of lesser fruits like maiz, plantains, yautias, and pumpkins, which generally yield a single crop, and if they yield an extra one, it is of such small yield that its value need not be taken into account. *De minimis non curat lex.* Therefore, it was not error for the lower court to take into account the value of the plantation but not that of the crop because in the case at bar both are about the same.

It may be alleged that as the intervener was not a party defendant to the unlawful detainer action, the court acted without jurisdiction in evicting him from the estate in the

absence of a judgment against him. However, by voluntarily intervening in the unlawful detainer action and by his failure to appeal from the decision which upheld the eviction previously enforced, Montalvo consented to the pronouncement which otherwise could not have been sustained on appeal.

From the foregoing, we are of the opinion that the appeal shall be dismissed and the judgment appealed from affirmed